# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUDREY F.,[1] | Case No.: 24cv2460-LR |
| Plaintiff, | |
| v. | **ORDER REGARDING JOINT MOTION FOR JUDICIAL REVIEW** |
| FRANK BISIGNANO, Commissioner of Social Security, | **[ECF No. 18]** |
| Defendant. | |

On December 26, 2024, Audrey F. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Defendant") denying Plaintiff's application for social security disability benefits. (ECF No. 1.) Now pending before the Court is the parties' "Joint Motion" seeking judicial review. (ECF No. 18 ("J. Mot.").) For the reasons discussed below, the Court **ORDERS** that judgment be entered affirming the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Pursuant to Civil Local Rule 7.1(e)(6)(b), the Court's opinions in Social Security cases filed under 42 U.S.C. § 405(g) "refer to any non-government parties by using only their first name and last initial."

24cv2460-LR

## I.  PROCEDURAL BACKGROUND

On July 11, 2022, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging disability beginning on January 21, 2022.  (ECF No. 9 ("AR")[2] at 510.)  After her application was denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ").  (Id. at 415.)  An administrative hearing was held on July 16, 2024.  (Id. at 336–60.)  Plaintiff appeared at the hearing with counsel, and testimony was taken from her and a vocational expert ("VE").  (Id.)

On August 9, 2024, the ALJ issued a written decision finding that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 21, 2022, through March 31, 2023, the date last insured.  (Id. at 18–33.)  The ALJ's decision became the final decision of the Commissioner on October 29, 2024, when the appeals council denied Plaintiff's request for review.  (Id. at 1–7.)  This timely civil action followed.  (See ECF No. 1.)

## II.  SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 21, 2022, through her date last insured of March 31, 2023.  (AR at 20.)  At step two, the ALJ found that Plaintiff had the following severe impairments: a history of cardiovascular accident (CVA)/stroke, depression, anxiety, alcohol abuse, methamphetamine abuse, cannabis use, and tobacco use.  (Id.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments.  (Id. at 21.)

---

[2] "AR" refers to the Administrative Record filed on February 24, 2025.  (ECF No. 9.)  The Court's citations to the AR in this Order are to the page numbers listed on the original document rather than the page numbers designated by the Court's Case Management/Electronic Case Filing System ("CM/ECF").  For all other documents, the Court's citations are to the page numbers affixed by CM/ECF.

24cv2460-LR

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to do the following:

> [P]erform medium work as defined in 20 CFR 404.1567(c). Specifically, the clamant can lift and/or carry, push/pull twenty-five pounds frequently, fifty pounds occasionally; she can stand and/or walk for six hours out of an eight-hour workday; she can sit for six hours out of an eight-hour workday; she can frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; she can occasionally climb ladders, ropes and scaffolds; she can understand, remember and carry out simple routine task with only occasional interaction with the general public; she can have occasional work-related non-personal non-social interaction with co-workers and supervisors; she is limited to jobs requiring only simple work-related decisions and she is able to keep pace sufficient to complete tasks and met quotas typically found in unskilled work.

(Id. at 24.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a day worker. (Id. at 32.) At step five, based on the VE testimony, the ALJ determined that a hypothetical person with Plaintiff's vocational profile and RFC could perform the requirements of occupations that existed in significant numbers in the national economy, such as a medium-level hand packager, laundry laborer, and cleaner industrial. (Id. at 33.) The ALJ then found that Plaintiff was not disabled from January 21, 2022, through March 31, 2023, the date last insured. (Id.)

### III. DISPUTED ISSUES

As reflected in the parties' Joint Motion, Plaintiff is raising the following issues as the grounds for reversal and remand: (1) whether the ALJ's RFC assessment for Plaintiff, that does not include any use of the cane, is supported by the record; and (2) whether the ALJ provided clear and convincing reasons to reject Plaintiff's subjective complaints. (J. Mot. at 4.)

### IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of

24cv2460-LR

judicial review is limited, and the denial of benefits will not be disturbed if it is supported by substantial evidence in the record and contains no legal error.  See id.; Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017).  "Substantial evidence means more than a mere scintilla, but less than a preponderance.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting Desrosiers v. Sec'y Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  In determining whether the Commissioner's decision is supported by substantial evidence, a reviewing court "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion," and "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." Ahearn v. Saul, 988 F.3d 1111, 1115 (9th Cir. 2021).  Where the evidence can be interpreted in more than one way, the court must uphold the ALJ's decision.  Id. at 1115– 16; Attmore v. Colvin, 827 F.3d 872, 875 (9th Cir. 2016).  The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely."  Revels, 874 F.3d at 654 (internal quotation omitted).

### V.  RELEVANT MEDICAL RECORDS AND TESTIMONY

**A.**    **Examination Findings**

**1. Dr. Elsayed**

From March 2022 through June 2024, Plaintiff was treated at Oxford Care Group by Dr. Mohammed Elsayed, a primary care physician.  (See AR at 633, 653–72, 909–79, 1593–1647.)  On March 22, 2022, Dr. Elsayed indicated that Plaintiff had no pain in her muscles or joints, no limitation of range of motion, and no paresthesia or numbness.  (Id. at 670.)  On April 23, 2022, Plaintiff reported continued right-sided weakness, but stated that her hand grips were normal and equal, and Dr. Elsayed noted that Plaintiff walked with a cane.  (Id. at 666.)  On May 15, 2022, Plaintiff reported that she had no headaches, vertigo, stiffness, pain limitation in range of motion, paresthesia, numbness, or weakness. (Id. at 664–65.)

24cv2460-LR

During multiple office visits from August 2022 through June 2024, Dr. Elsayed documented that Plaintiff did not have arthralgias, back pain, gait problems, joint swelling, myalgias, neck pain, neck stiffness, dizziness, tremors, seizures, syncope, facial asymmetry, weakness, light-headedness, and numbness.  (See id. at 916–18, 922–24, 927–29, 931–34, 937–39, 941–44, 967–69, 971–73, 975–79, 1593–95, 1605–07, 1612–15.)  During several examinations, Dr. Elsayed observed Plaintiff using a cane with a "gait problem" and right-sided weakness.  (See id. at 931, 937, 962, 964, 997, 1626, 1631, 1637, 1642.)  On October 14, 2023, Dr. Elsayed placed an order for a four-pronged cane for Plaintiff and referred her to physical therapy.  (Id. at 918, 921.)

On March 6, 2024, Dr. Elsayed determined that Plaintiff cannot stand for more than fifteen minutes and has limitations in her upper extremities.  (Id. at 1583–84.)  Dr. Elsayed also opined that Plaintiff is unable to perform work and is permanently disabled.  (Id. at 1583.)

### 2. Dr. Dao

On January 10, 2023, Plaintiff underwent an internal medicine consultative examination with Dr. Phong Dao.  (Id. at 855–62.)  Dr. Dao reported that Plaintiff was able to generate ten pounds of force using her right hand and thirty-five pounds of force using her left hand, noting that she is right-hand dominant.  (Id. at 858.)  In his functional assessment, Dr. Dao concluded that Plaintiff could lift and carry fifty pounds occasionally, twenty-five pounds frequently, and walk or stand for six hours in an eight-hour day.  (Id. at 861.)  Dr. Dao also determined that Plaintiff does not use or require any assistive device for ambulation and specifically noted that Plaintiff entered the examination room without any assistive device.  (Id. at 857, 861.)

Dr. Dao further reported that Plaintiff had difficulty standing on her right toes and heels, and walked with a slight limp, bearing most of her weight on her left leg when she ambulates.  (Id. at 858.)  He also noted that Plaintiff's motor strength was 5/5 in all extremities, but that her right upper extremity was slightly weaker than her left upper extremity despite the 5/5 motor strength score.  (Id. at 860.)

### 3. Dr. Whitehead

On January 23, 2023, Plaintiff underwent a psychiatric consultative examination with Dan Whitehead, Ph.D. (See id. at 871–78.) During the examination, Plaintiff stated that she had difficulty with general daily tasks around the house because of her reported problems, but could perform most activities of daily living on her own schedule. (Id. at 873.) Specifically, Plaintiff could "pick up and straighten around the house, take out the trash, dust, perform general cleaning, sweeping, mopping, vacuuming, laundry, dishes, and other general household tasks." (Id.) Additionally, she could cook, shower, dress, bathe, and perform all personal hygiene activities. (Id.) Plaintiff also told Dr. Whitehead that she could drive and use public transportation. (Id.) Dr. Whitehead observed that Plaintiff's gait seemed rather slow, due to physical problems, and that she was using a cane. (Id. at 874.) Dr. Whitehead ultimately concluded that Plaintiff could consistently perform work activities, but had a mild limitation in completing a full workday or workweek. (Id. at 876.)

### 4. Dr. Lucas

From February 22, 2022, through March 21, 2024, Plaintiff received treatment from her primary psychiatrist, Darren Lucas, M.D., at South Bay Guidance Wellness. (See id. at 753–834, 879–907, 1585–92.) During this period, providers at South Bay Guidance Wellness regularly documented Plaintiff's cane use and limping gait. (See id. at 766, 795, 888, 891, 897, 899, 905, 1588.) On February 22, 2022, Plaintiff reported difficulties with activities of daily living due to her stroke. (Id. at 768.) By February 15, 2023, Plaintiff was able to complete activities of daily living and reported walking independently, with a steady gait. (Id. at 888–89.) On June 16, 2023, Plaintiff reported she could complete activities of daily living, but she walked with a cane and had a slightly unsteady gait. (Id. at 897.)

### 5. Urgent care examinations

On October 19, 2022, PA Austin Brett examined Plaintiff at SouthBay Urgent Care for a hand injury and lower leg swelling. (Id. at 837.) Plaintiff denied having joint pain,

24cv2460-LR

edema, myalgias, dizziness, or headache. (Id. at 837–38.) Plaintiff's musculoskeletal examination was abnormal with mild tenderness. (Id. at 839.)

On July 19, 2023, Plaintiff was examined by PA Megan Rodriguez at SouthBay Urgent Care for a rash. (Id. at 842.) During the examination, Plaintiff denied dizziness, headache, and numbness. (Id.) Her gait was normal, and her lower and upper extremity evaluations were also normal. (Id. at 843–44.) A few weeks later, on August 7, 2023, Plaintiff was examined by PA Austin Brett at SouthBay Urgent Care for bug bites. (Id. at 846.) Plaintiff denied joint pain, and her gait was normal. (Id. at 846–47.)

### 6. Physical therapy

From May 6, 2022, through August 22, 2024, Plaintiff attended physical therapy at Spine and Sport Physical Therapy. (See id. at 39–335, 673–752.) Plaintiff's treatment providers consistently documented her use of a single-point cane during these visits. (See id. at 103, 110, 113, 118, 121, 125, 129, 132, 135, 139, 144, 148, 153, 157, 160, 335, 331, 335, 686, 693, 694, 698, 702, 874.)

At her initial session with PT Woody Somvichai on May 6, 2022, Plaintiff reported difficulty walking without a cane, using her right arm for activities of daily living, and performing household chores. (Id. at 744.) She also described increased pain with lifting objects, grocery shopping, and bagging groceries, though she could use a handrail to climb stairs. (Id.) On May 9, 2022, Plaintiff began exercise for the first time since her stroke, reporting pain of 7/10. (Id. at 741.) However, during subsequent sessions, her pain decreased to 2/10. (See id. at 707, 713, 717, 725, 729, 733, 737.) By late May 2022, Plaintiff reported walking around her neighborhood and riding a bike for fifteen minutes, but also stated that she did not consistently follow her home exercise program. (Id. at 725, 729, 733.) Throughout 2022, Plaintiff reported gradual improvement, but continued to experience difficulty with stairs, biking, and walking more than half a block due to fatigue. (See id. at 676, 691, 695, 699, 703, 737.)

In 2023, Plaintiff reported mixed progress. During some appointments, she denied pain and reported improvement. (See id. at 41, 45, 49, 78, 328, 332.) However, during

7

other sessions, Plaintiff complained of neck, shoulder, and hand pain, tremors, and intermittent numbness.  (See id. at 59, 63, 67, 71, 82, 89, 92, 97.)  On December 4, 2023, she also reported aggravation of pain after household tasks such as cleaning.  (Id. at 97.)

In January 2024, Plaintiff reported extreme right shoulder pain, lower extremity weakness, balance problems, and reliance on a cane for walking short distances and a walker for walking longer distances.  (See id. at 102–03, 111, 115.)  In February and March 2024, Plaintiff reported improvement, denying pain, and stated that she felt stronger and more stable.  (See id. at 122, 126, 133, 137, 141, 145.)  On March 7, 2024, PTA Linda Esquerra reported that Plaintiff's activities of daily living were within functional limits.  (Id. at 149.)  On March 22, 2024, Plaintiff reported feeling stronger and more stable, with improved function in her right upper extremity.  (Id. at 154.)  On June 10, 2024, she reported ongoing shoulder pain.  (Id. at 162.)  On June 27, 2024, Plaintiff reported ongoing bicep tendon pain and slight balance problems, but described overall improvement.  (Id. at 180.)

**B.    Plaintiff's Testimony and Statements**

**1. Plaintiff's function report**

In her function report, Plaintiff stated that she relies on a cane, making it difficult for her to walk, maintain balance, and complete activities of daily living without using an assistive device for support.  (Id. at 569.)  Plaintiff reported that her typical day includes waking up, showering at a friend's house, and sitting in her car to read.  (Id. at 570.)  She noted that she takes care of her necessary tasks, such as her doctor's appointments or "get[ting] something to eat."  (Id.)

Plaintiff claimed that her injuries affect her ability to dress, bathe, care for her hair, shave, use the toilet, and apply makeup.  (Id.)  Additionally, she noted that her injuries affect her ability to lift, squat, bend, stand, reach, walk, kneel, stair climb, see, use her hands, and her memory.  (Id. at 574.)  However, Plaintiff reported that her injuries do not affect her ability to sit.  (Id.)  Plaintiff stated that cooking is difficult due to weakness in her right hand.  (Id. at 571.)  She rarely goes outside or shops, but when she does, she

24cv2460-LR

takes her cane and uses carts. (Id. at 572.) Plaintiff reported that she goes to the park, library, and a friend's house regularly. (Id. at 573.) Plaintiff also claimed that she "can't go out and do anything because [she does] not want to and has a limp." (Id.) Finally, Plaintiff noted she can only walk half a block with a walker or cane before needing to stop and rest. (Id. at 574.)

### 2. Plaintiff's testimony during administrative hearing

On July 16, 2024, Plaintiff testified that she was homeless and that she stayed at her friends' homes, as well as her aunt's house. (Id. at 342.) She stated that she had previously owned a cleaning service business for about twelve years, working mostly on beach rentals and earning fifteen to twenty dollars per hour for forty hours a week. (Id. at 344–45.) Her last day of work was in January 2022. (Id.)

Plaintiff further testified that she uses assistive devices, specifically a walker and a four-pointed cane prescribed by her doctors. (Id. at 347.) She also stated she uses a shower chair. (Id.) She also stated that she has not had any surgeries that continue to impact her ability to work. (Id.) Additionally, Plaintiff testified that she has been unable to return to work since her stroke. (Id. at 349–50.) She explained that the stroke weakened her right side and impacted everything in her life, noting she is unable to lift anything or go up the stairs. (Id.)

Plaintiff also testified that she can stand for about ten minutes with a cane before needing to sit. (Id. at 350.) Plaintiff stated that she uses a cane every day and requires an assistive device to walk, even inside the home. (Id. at 350–51.) She added that she can walk less than half a block and cannot carry a gallon of milk. (Id.) Plaintiff further testified that she has trouble bending over because she loses her balance. (Id. at 351.) She also criticized the January 10, 2023, consultative examination conducted by Dr. Dao, stating it lasted only five minutes, was not thorough, and did not involve a review of her records. (Id. at 352.) Plaintiff also noted that she brought her cane to that examination. (Id.)

/ / /

24cv2460-LR

## VI.  DISCUSSION

**A.  <u>The ALJ's RFC Assessment is Supported by the Record</u>**

### 1.  Parties' arguments

Plaintiff argues that the ALJ erred by failing to include the use of a cane in the RFC he assessed for Plaintiff, despite extensive evidence in the record showing that Plaintiff had used a cane since her stroke in January 2022.  (J. Mot. at 4–5.)  Plaintiff cites treatment records documenting her need for a single-point cane for prolonged walking, and subsequent records documenting her need for a four-pronged cane for ambulation.  (See <u>id.</u> at 6–7.)  Plaintiff claims that the ALJ incorrectly found that Plaintiff could perform medium work, arguing that her need for a cane precludes her from walking for six hours a day or carrying up to fifty pounds.  (<u>Id.</u> at 8.)  Plaintiff also challenges the ALJ's evaluation of the consultative examiner's examination, Dr. Dao, who found that Plaintiff does not need an assistive device and that Plaintiff can walk or stand for six hours in an eight-hour day.  (<u>Id.</u> at 9)  Plaintiff argues that the findings are inconsistent with other physical examinations in the record.  (<u>Id.</u>)  Plaintiff notes that ten days after the consultative examination, a physical therapist documented that she could not walk for an hour without an assistive device or for more than fifteen minutes without a single-point cane.  (<u>Id.</u> (citing AR at 45, 51–52, 103, 110, 679, 682).)  Plaintiff claims that Dr. Dao could not accurately assess her mobility because his examination of Plaintiff lasted only five minutes, compared to Plaintiff's more than forty one-hour physical therapy sessions, which documented limitations inconsistent with Dr. Dao's findings.  (J Mot. at 9.)  Plaintiff further contends that the ALJ erred in rejecting the opinion of treating physician Dr. Elsayed Mohammed, arguing that his assessment that Plaintiff could not work was reasonable given her need for a cane.  (<u>Id.</u> at 10.)

In response, Defendant claims the ALJ properly assessed the RFC for medium exertional work.  (<u>Id.</u>)  Defendant argues that while the record reflects that Plaintiff used a cane, no evidence in the record shows that Plaintiff required a cane for ambulation, and argues that using a cane for ambulation is not the same as a doctor requiring one.  (<u>Id.</u> at

24cv2460-LR

11–12.)  Defendant also cites evidence that Plaintiff functioned independently, showed improved mobility following physical and occupational therapy, and did not use an assistive device during the consultative examination.  (See id. at 11–12.)  Finally, Defendant argues that the ALJ properly evaluated the persuasiveness of the medical opinion evidence and properly rejected Plaintiff's subjective testimony.  (Id. at 13–14.)

### 2. Applicable law

RFC refers to what the claimant can do in a work setting, despite the claimant's mental or physical limitations caused by impairments or related symptoms.  20 C.F.R. § 404.1545(a)(1); see also Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (providing that an RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.").  In assessing the claimant's RFC, the ALJ must consider all the claimant's medically determinable impairments, including nonsevere medically determinable impairments.  20 C.F.R. § 404.1545(e).  "[A]n ALJ must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) (quoting SSR 96-9p, 1996 WL 374184, at *5).  Careful consideration must be given to "any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'"  Id.

The RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1546(c); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.").  Where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict."  Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see also Morgan v. Comm'r of Soc. Sec. Admin.,

24cv2460-LR

169 F.3d 595, 603 (9th Cir. 1999) (holding that the ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within physicians' reports). In determining whether an ALJ committed error in assessing the RFC, the relevant inquiry is whether the medical evidence supports the ALJ's findings. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173–74 (9th Cir. 2009) (holding that the RFC assessment adequately captured restrictions when it was consistent with the concrete limitations in the medical opinions).

### 3. Analysis

#### a. The ALJ properly evaluated the medical opinion evidence.

Plaintiff disputes the ALJ's analysis of Plaintiff's treating physician's and consultative examiner's opinions and how the ALJ incorporated those opinions into the RFC determination. (J. Mot. at 8–10, 12–14.) Plaintiff argues that the ALJ erred in evaluating both Dr. Dao's and Dr. Elsayed's opinions. (Id. at 8–10.) Defendant maintains that the record supports the ALJ's assessments of both opinions. (Id. at 12–14.)

In assessing the medical opinion evidence, the ALJ found that the consultative examiner, Dr. Dao's, opinion mostly persuasive because it is supported by objective medical findings and consistent with the record as a whole. (AR at 30.) By contrast, the ALJ found the treating physician, Dr. Elsayed's, opinion unpersuasive, explaining that his conclusion that Plaintiff could not sit or stand for longer than fifteen minutes is not supported by medical evidence and is not consistent with the record. (Id. at 29–30.)

In evaluating the intensity and persistence of a claimant's symptoms, an ALJ must consider all the available evidence from the claimant's "medical sources and nonmedical sources about how [the claimant's] symptoms affect [her]." 20 C.F.R. § 404.1529(c)(1). Medical opinions are more persuasive if they are supported by explanations and objective medical evidence, 20 C.F.R. § 404.1520c(c)(1), and if they are consistent with the evidence from other medical and nonmedical sources, 20 C.F.R. § 404.1520c(c)(2). Furthermore, the medical opinion of a specialist "about medical issues related to his or her area of specialty" is more persuasive than that of a non-specialist. 20 C.F.R.

24cv2460-LR

§ 404.1520c(c)(4).  The purpose, length, and extent of a medical source's treatment relationship with the claimant, the kinds and extent of examinations and testing performed, and the frequency of the claimant's visits, may also demonstrate a medical source's knowledge and understanding of the claimant's impairments.  20 C.F.R. § 404.1520c(c)(3)(i)–(v).  In addition, a medical source's familiarity with other evidence in a claim may make the source's opinion more persuasive.  20 C.F.R. § 404.1520c(c)(5).

Revised regulations apply to an ALJ's analysis of medical opinion evidence for claims filed on or after March 17, 2017.  See Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at 5867–68 (Jan. 18, 2017).  Under these new rules, the ALJ is no longer required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  20 C.F.R. § 404.1520c(a).  The ALJ must instead consider all the medical opinions in the record and evaluate each medical opinion's persuasiveness using factors including supportability, consistency, relationship with the claimant, and specialization.  Id.  The two most important factors in determining a medical opinion's persuasiveness are the opinion's "supportability" and "consistency."  20 C.F.R. § 404.1520c(a).  The ALJ must articulate "how [he or she] considered the supportability and consistency of factors for a medical source's medical opinions . . . in [his or her] decision."  20 C.F.R. § 404.1520c(b)(2).

Related to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions . . . will be."  20 C.F.R. § 404.1520c(c)(1).  For consistency, the "more consistent a medical opinion(s) is with the evidence from other medical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. § 404.1520c(c)(2).  The ALJ is not required to explain how the ALJ considered other factors, unless the ALJ finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical.  See 20 C.F.R. § 404.1520c(b)(3).

24cv2460-LR

The revised rules do not, however, replace all previous case law within the Ninth Circuit.  For example, ALJs still may not cherry-pick evidence in discounting a medical opinion.  See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014); see also Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing an ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many others that indicated continued, serious impairment").  Nor, for instance, may the ALJ dismiss medical opinions without providing a detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions.  [They] must set forth [their] own interpretation and explain why they, rather than the doctors', are correct.

Regenmitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999) (citation omitted).

### i.  Dr. Elsayed

Dr. Elsayed has been treating Plaintiff since March 2022.  (See AR at 633.)  On March 6, 2024, Dr. Elsayed completed a Verification of Physical/Mental Incapacity Report and a Physical Residual Functional Capacity Questionnaire.  (Id. at 1583–84.)  In the one-page verification report, Dr. Elsayed checked boxes indicating that Plaintiff cannot perform any work, that her disability is permanent, and that she cannot care for herself.  (Id. at 1583.)  In the one-page Physical Residual Functional Capacity Questionnaire, Dr. Elsayed opined that Plaintiff cannot sit or stand for more than fifteen minutes.  (Id. at 1584.)

The ALJ found that Dr. Elsayed's opinion is unpersuasive "because of its lack of supportability and inconsistency with the evidence of the record."  (Id. at 29.)  The ALJ further opined, "[t]his extreme opinion is not supported by the evidence of record."  (Id.)  The ALJ reasoned that this is "an opinion on an issue reserved to the Commissioner, this statement is not entitled to controlling weight and is not given special significance

24cv2460-LR

pursuant to 20 C.F.R. 404.1527(d) and 416.927(d) and SSR 96-5." (Id. at 29–30.) The ALJ also stated the following:

> The claimant not being able to stand or sit longer than fifteen minutes is inconsistent with the record as a whole, which showed she was found to have had an acute left pontine stroke most likely secondary to methamphetamine use, she improved significantly with physical and occupational therapy in rehabilitation, the right upper and lower extremity weakness was almost completely resolved, and she was independent for mobility and gait; she had stopped smoking but was vaping, reported continued right sided weakness, but her hand grips were normal and equal. Further examinations were generally within normal limits, had good results from physical therapy and she had normal gait and strength.

(Id. at 30 (citing id. at 642, 664, 676, 838–39, 843, 967–69, 971–73, 1033).)

Here, the Court notes that while the ALJ's language is imprecise, the Court finds the ALJ's reasoning readily apparent. See Woods v. Kijakazi, 32 F.4th 785, 793 n.4 (9th Cir. 2022) (noting that when the ALJ's use of supportability and inconsistency terms are imprecise, courts look to determine whether "the ALJ's meaning . . . is clear from context"); see also Vincent v. Kijakazi, Case No. 22-15941, 2023 WL 3018060, at *1 & n.1 (9th Cir. Apr. 20, 2023) (noting that "[a]lthough the ALJ's language was arguably imprecise, his reasoning is readily apparent" as such to not warrant a remand to reweigh the evidence).

Regarding supportability, the ALJ cited Dr. Elsayed's examination notes, which demonstrate that Dr. Elsayed's highly restrictive check-box opinion—that Plaintiff cannot perform work or stand or sit for more than fifteen minutes—is not supported by the record. (AR at 30 (citing id. at 664–66 (stating that in April 2022, Plaintiff was "generally healthy, no change in strength or exercise tolerance . . . no pain in muscle or joints, no limitation of range of motion"); id. at 676 (noting that in November 2022, Plaintiff had a 0/10 pain level and was fully functional in her activities of daily living); id. at 967–73 (reporting that in August through October 2022, Plaintiff did not have gait problems and had normal gait)).) Accordingly, the record supports the ALJ's conclusion that Dr. Elsayed's restrictive opinion is not supported by his own treatment notes.

Regarding consistency, the ALJ cited other medical records that demonstrate that Dr. Elsayed's opinion is not consistent with the record as a whole. (Id. at 30.) The record reflects that Plaintiff's lower extremity weakness was almost completely resolved, that she had good outcomes after physical therapy, and "was independent for mobility and gait." (Id. (citing id. at 642 (noting that in January 2022, Plaintiff was independent for ambulation and independent in activities of daily living); id. at 838–39, 843 (stating that in October 2022 and July 2023, Plaintiff had a normal gait); id. at 1033 (stating that "[Plaintiff] has improved significantly with physical and Occupational Therapy. Right and lower extremity weakness almost completely resolved. [Plaintiff] was independent for mobility and gait.")).) The ALJ's citation of specific treatment records therefore adequately supports his conclusion that Dr. Elsayed's opinion is inconsistent with the record. See Makayla M. v. Bisignano, Case No.: 24-cv-1343-SBC, 2025 WL 2709859, at *6 (S.D. Cal. Sep. 23, 2025) (finding that a doctor's medical opinion was inconsistent with the record showing the claimant's strong and steady gait, and that she did not require an assistive device); see also Frank S. v. O'Malley, Case No.: 3:23-cv-1795-DTF, 2024 WL 3551867, at *3, *6 (S.D. Cal. July 26, 2024) (finding that a doctor's medical opinion observing that the claimant had difficulty sitting or standing for more than ten minutes was inconsistent with other evidence in the medical record). Accordingly, the Court concludes that the ALJ properly found Dr. Elsayed's opinion—that Plaintiff is unable to perform any work and cannot sit or stand for more than fifteen minutes—was inconsistent with the medical record.

Although Plaintiff argues that Dr. Elsayed's opinion is "not extreme" because he previously documented Plaintiff's right-sided weakness, limp, and use of a cane, (J. Mot. at 10), this argument lacks merit. The evidence that Plaintiff cites contradicts her past treatment records, where Dr. Elsayed documented that Plaintiff had a normal gait. (See, e.g., AR at 666, 918, 967, 969.) Dr. Elsayed's contradiction between his own medical opinion and his treatment records is further substantial evidence to reject Dr. Elsayed's medical opinion. See Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020) ("A conflict

16

between a . . . physician's medical opinion and his own notes is a 'clear and convincing reason for not relying on the doctor's opinion,' and therefore is also a specific and legitimate reason for rejecting it."); see also Fiona M. v. Dudek, Case No.: 3:24-cv-00568-AHG, 2025 WL 720190, at *5–6 (S.D. Cal. Mar. 6, 2025) (finding that a medical opinion regarding plaintiff's physical limitations was inconsistent with other records noting "gait normal" and "normal range of motion.").

For these reasons, the Court finds that the ALJ properly found Dr. Elsayed's medical opinion unpersuasive. Accordingly, the Court concludes that the ALJ did not err in excluding Dr. Elsayed's medical opinion in the RFC determination.

### ii. Dr. Dao

On January 10, 2023, Plaintiff underwent an internal medicine consultative examination with Dr. Dao. (AR at 856.) Dr. Dao opined that Plaintiff could lift and carry fifty pounds occasionally, twenty-five pounds frequently, and walk or stand for six hours in an eight-hour workday. (Id. at 861.) He also noted that Plaintiff did not use or require an assistive device for ambulation and specifically noted that Plaintiff entered the examination room without an assistive device. (Id. at 858.) Dr. Dao further assessed a medium level of exertion with frequent postural activity. (Id. at 861.)

The ALJ found that Dr. Dao's opinion was "mostly persuasive because of its supportability and consistency with the evidence of the record." (Id. at 30.) As to supportability, the ALJ found that the opinion "was based on an in-person exam, well-supported by objective, medically acceptable clinical or laboratory diagnostic techniques, the assessment is complete, specific facts are cited upon which the conclusion is based[.]" (Id.) The ALJ cited specific findings from Dr. Dao's examination notes, including observations regarding Plaintiff's upper and lower extremities, grip strength, gait, and balance. (Id.; see also id. at 864–70.) Dr. Dao's opinion also spans five pages of detailed patient notes and observations, which support the ALJ's determination. (Id. at 856–61.) Thus, the ALJ's finding is sufficient because it is "supported by substantial evidence." Woods, 32 F.4th at 792; see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997)

24cv2460-LR

(finding that substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"); Matthew C. v. Comm'r of Soc. Sec., Case No.: 24cv322-JES (LR), 2025 WL 572891, at *13 (S.D. Cal. Feb. 21, 2025) (affirming ALJ's finding on supportability because state examiner's medical opinion was supported by "relevant . . . objective medical evidence").  Accordingly, the Court concludes that the ALJ did not err by finding that Dr. Dao's opinion is supported by evidence of the record.

For consistency, the ALJ found Dr. Dao's opinion:

> [L]argely consistent with the record as a whole, which showed she was found to have had an acute left pontine stroke most likely secondary to methamphetamine use, she improved significantly with physical and occupational therapy in rehabilitation, the right upper and lower extremity weakness was almost completely resolved, and she was independent for mobility and gait; she had stopped smoking but was vaping, reported continued right sided weakness, but her hand grips were normal. Further examinations were generally within normal limits, had good results from physical therapy and she had normal gait and strength.

(AR at 30.)

The ALJ therefore cited a substantial amount of evidence to show that Dr. Dao's opinion is consistent with the overall record, including treatment notes reflecting Plaintiff's improvement in physical and occupational therapy, normal hand grips, and normal gait and strength.  (Id. (citing id. at 641, 664–66, 676, 838–39, 843–44, 962–63, 968–69, 971, 973, 1033–34).)  Such evidence is consistent with Dr. Dao's assessment of medium exertion with frequent postural activity.  (Id. at 30.)  Accordingly, the Court concludes that the ALJ accurately found Dr. Dao's opinion was consistent with the medical record.  See Woods, 32 F.4th at 792 ("Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'") (quoting 20 C.F.R. § 404.1520c(c)(2)); see also Matthew C., 2025 WL 572891, at *13 (affirming ALJ's finding that state medical

24cv2460-LR

examiner opinion was consistent with overall medical record which showed plaintiff had normal motor strength, normal range of motion, and normal gait).

For these reasons, the Court finds that the ALJ properly found Dr. Dao's opinion was medically persuasive and did not err in incorporating it into the RFC determination. The Court therefore concludes that the ALJ did not err in evaluating the medical opinion evidence or in incorporating the opinions into the RFC determination.

### b. The ALJ properly excluded Plaintiff's cane use from his RFC assessment.

Plaintiff also contends that the ALJ erred in formulating her RFC by failing to properly consider her cane use.  (J. Mot. at 4.)  Defendant argues that the ALJ did not err because there "is no indication that [Plaintiff] required [a cane] for ambulation."  (Id. at 11.)  As explained further below, the Court agrees with Defendant.

Medical documentation must be present in the record, which specifically establishes that the use of a cane is medically required for Plaintiff's specific limitations, including the type of limitation, duration of use, and scope of use.  "[T]he use of an assistive device is probative of a claimant's functional limitations only where it is medically required."  Velasquez v. O'Malley, Case No.: 23-cv-1683-RBM-BLM, 2024 WL 3220726, at *4 (S.D. Cal. June 27, 2024) (quoting Luis G. v. Saul, Case No.: ED CV 19-00317-DFM, 2020 WL 1433589, at *3 (C.D. Cal. Mar. 24, 2020)); see also Dean N. v. Saul, Case No.: CV 18-09840-DFM, 2020 WL 430962, at *1 (C.D. Cal. Jan. 28, 2020) ("The use of a hand-held assistive device such as a cane is a functional limitation only if it is medically required.").  "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)."  SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996).

24cv2460-LR

In assessing Plaintiff's RFC, the ALJ determined that Plaintiff could perform medium work as defined in 20 C.F.R. § 404.1567(c).  (AR at 24.)  The ALJ acknowledged Plaintiff's testimony that she "has a walker and a four-point cane that was diagnosed from a doctor as well as a shower chair," and nonetheless found that "despite the alleged impairment, the claimant has engaged in a somewhat normal level of daily activity and interaction."  (Id. at 25.)  The ALJ also noted other reports of Plaintiff's cane use, but still concluded that she could perform medium work, despite her testimony about physical limitations and medical records documenting cane use.  (See id. at 25–30.)  Contrary to Plaintiff's assertion, the ALJ properly discounted Plaintiff's cane use in determining the RFC because the record does not contain evidence that the cane was medically required.  Plaintiff's statements and testimony regarding her cane use do not, by themselves, establish that a cane was medically necessary.  See Frank S. v. Kijakazi, Case No.: 21-cv-01074-JLB, 2022 WL 4125234, at *3 (S.D. Cal. Sep. 9, 2022); see also Marin v. Astrue, Case No.: CV 11-09331 AJW, 2012 WL 5381374, at *4 (C.D. Cal. Oct. 31, 2012) (finding ALJ "justifiably concluded that plaintiff's use of a cane did not warrant a more limited RFC" where only plaintiff's own testimony corroborated her use of a cane).  In her Adult Disability and Function Reports, Plaintiff asserted that she requires a cane to walk, that she can only walk "half a block with the walker or cane," that she uses the cane most often, and that she "still need[s] to use [her] cane to walk."  (See AR at 574–75, 580, 587, 600.)  Plaintiff similarly testified at the hearing that she uses a walker and four-point cane prescribed by her doctors and that, since her stroke, she has needed a device to assist with walking.  (Id. at 347, 351.)  She stated that even with her cane, she can only stand "about ten minutes" and walk "less than half a block."  (Id. at 350–51.)  Although Plaintiff reported using a cane, her testimony alone is not sufficient to establish that a cane was medically necessary.  See Frank S., 2022 WL 4125234, at *4 (finding that plaintiff's testimony claiming he uses the cane for seventy to eighty percent of the time was insufficient to establish medical necessity); Marin, 2012 WL 5381374, at *4 (finding that plaintiff's testimony during an administrative hearing claiming she "felt

24cv2460-LR

more secure with a cane," along with other treatment reports, were insufficient to establish medical necessity).  Accordingly, the Court finds that Plaintiff's testimony is insufficient to establish that the cane was medically required, and the ALJ did not err by omitting cane use from the RFC determination.

Plaintiff further relies on a treatment note from Dr. Elsayed to establish medical necessity.  (J. Mot. at 7; see also AR at 918–21.)  In support, Plaintiff cites October 12, 2023, treatment note in which Dr. Elsayed evaluated her for bilateral hand and wrist pain, and carpal tunnel symptoms.   (See AR at 916.)  Dr. Elsayed issued a "DME [durable medical equipment] Misc Order: four legs cane" without providing any explanation or circumstances under which the cane was needed.  (See id. at 918–19.)   The Court finds that the brief notation for a "four legs cane" does not satisfy SSR 96-9p's requirement that medical documentation must describe the specific circumstances under which an assistive device is required, including frequency of use, distance, terrain, and other relevant details.  See SSR 96-9p, 1996 WL 374185, at *7; see also Orozco v. O'Malley, Case No. 1:23-cv-01373-SKO, 2024 WL 3969148, at *2, *7(E.D. Cal. Aug. 28, 2024) (finding that a referral for a DME walker, did not establish medical necessity absent descriptions of specific circumstances for which the assistive device was needed); Amber C. v. Saul, Case No. 2:19-cv-03208-MAA, 2020 WL 2061771, at *3 (C.D. Cal. Apr. 29, 2020) (finding that physician notes instructing a claimant to use a walker with "routine frequency" did not establish medical necessity absent descriptions of specific circumstances for which the assistive device was needed); Nielsen v. Comm'r, No. 2:18-cv-1168 AC, 2019 WL 4734758, at *5 (E.D. Cal. Sep. 27, 2019) (finding that a home health referral to "use cane" did not establish medical necessity absent descriptions of specific circumstances for which the cane was needed).  Accordingly, the Court finds that Dr. Elsayed's "DME Misc Order" does not establish that Plaintiff was medically required to use a cane for ambulation.

Plaintiff also contends that her treatment records establish that a cane was medically necessary; however, after reviewing the cited records, the Court finds that the

24cv2460-LR

records merely document Plaintiff's use of a cane and fail to demonstrate medical necessity.  (J. Mot. at 6–7.)  Specifically, those records include medical providers' references to Plaintiff's use of a cane, such as "walking with a cane, can't exercise," "walks with a cane," and "patient presents in clinic with a SPC for short distances and reports needing a walker for longer distances."  (See AR at 103, 335, 666, 686, 694, 698, 702, 705, 718, 744, 766, 795–97, 874, 888, 891, 897, 899, 905, 931, 964–65, 997, 1588.)  Observations by medical providers that Plaintiff *used* a cane are not the same as medical findings that Plaintiff *required* a cane for ambulation, and are insufficient to show medical necessity.  See Velasquez, 2024 WL 3220726, at *4 (finding that provider notes mentioning use of a cane at a medical appointment do not establish medical necessity); see also Theodore K. M. v. O'Malley, Case No. 5:24-CV-00509-DTB, 2024 WL 5316330, at *4 (C.D. Cal. Nov. 6, 2024) (finding that provider notes referencing a claimant's use of a cane do not establish medical necessity); Quintero v. Colvin, Case No. 1:13–cv–00478–SKO, 2014 WL 4968269, at *10 (E.D. Cal. Sep. 29, 2014) ("Mentioning the use of a cane [in physician treatment notes] neither established [p]laintiff needed the cane to balance or walk, nor described the circumstances for which the cane would be needed"); Cashin v. Astrue, Case No.: EDCV 09-161 JC, 2010 WL 749884, at *11 (C.D. Cal. Feb. 24, 2010) (finding physician's observation of claimant's use of cane during examination was not "an objective finding that plaintiff's cane was medically required").  Accordingly, the record in this case does not contain objective medical evidence that Plaintiff's use of a cane was medically required.  See SSR 96-9p, 1996 WL 374185, at *7.

Substantial evidence in the record therefore supports the ALJ's RFC determination that Plaintiff did not require a cane, as the record contains no documentation showing that any medical provider prescribed or found that Plaintiff required a cane for ambulation.  Accordingly, the Court concludes that the ALJ did not err in excluding the use of a cane in the RFC determination.

/ / /

22

24cv2460-LR

### 4. Conclusion

For the reasons stated above, the Court finds that the ALJ properly evaluated the medical opinion evidence and incorporated those findings into the RFC determination. The ALJ reasonably found that Dr. Elsayed's extreme limitations were unsupported and inconsistent with the record, while finding Dr. Dao's opinion was both supported by and consistent with objective evidence in the record. The Court also finds that substantial evidence supports the ALJ's decision to omit cane use from Plaintiff's assessed RFC, because the record does not establish that the cane was medically required under SSR 96-9p. Accordingly, the ALJ did not err in the RFC determination.

**B.     The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony**

### 1. Parties' arguments

Plaintiff contends that the ALJ failed to articulate clear and convincing reasons for rejecting her subjective symptom testimony. (J. Mot. at 16.) Specifically, Plaintiff argues that the ALJ improperly discounted Plaintiff's statements that she could not stand or walk without a cane for more than fifteen minutes. (Id. at 17–18.) Plaintiff also argues that the ALJ did not provide any reason to reject her statement that she had a cane at her appointment with the consultative examiner, Dr. Dao. (Id. at 18–19.) Further, Plaintiff argues that because the ALJ failed to cite any treatment, beyond physical therapy, that could improve Plaintiff's ability to walk for prolonged periods without a cane, the ALJ lacked a proper basis to reject Plaintiff's subjective symptom testimony on the ground that her treatment was conservative. (Id. at 18.) Plaintiff also asserts that the ALJ erred by equating "gait" to the "length of time" Plaintiff could walk and stand. (Id.)

Defendant responds that the ALJ properly discounted Plaintiff's symptom testimony, including her use of a cane, because the objective findings in the record did not support Plaintiff's statements. (Id. at 21–23.) Defendant argues that Plaintiff's reported independence and ability to perform most daily activities undermines her claim of total disability. (Id. at 21.) Defendant further asserts that the ALJ properly considered

23

24cv2460-LR

Dr. Dao's consultative examination findings, and argues that those findings were supported by substantial evidence.  (Id. at 22 (citing AR at 600, 856–61).)

### 2.  Applicable law

The Ninth Circuit has established a two-part test for evaluating a claimant's allegations regarding subjective symptoms.  See Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017); see also SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).  First, the ALJ determines whether there is "objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged." Trevizo, 871 F.3d at 678 (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  Second, if a claimant presented such evidence, and there is no evidence of malingering, the ALJ may reject the claimant's statements about the severity of the claimant's symptoms "only by offering specific, clear and convincing reasons for doing so."  Id.

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015).  "[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination."  Id. at 489.  Instead, the ALJ must identify the testimony regarding the claimant's symptoms that the ALJ finds not credible, and explain what evidence undermines the claimant's testimony.  See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014); see also Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (finding error where the ALJ "never connected the medical record" to the claimant's testimony, and did not make "a specific finding linking a lack of medical records to [the claimant's] testimony about the intensity" of her symptoms); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (providing that the ALJ's reasons for discounting a claimant's testimony must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

24cv2460-LR

"Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about symptoms, evidence from medical sources, and observations by the Agency's employees and other individuals.  See 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029.  In addition, the ALJ may consider other factors, such as the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain.  See 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029.

### 3.  Analysis

The parties do not dispute the ALJ's finding that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged debilitating symptoms. (AR at 25; see also J. Mot. at 20.)  Accordingly, the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptoms is satisfied.

Turning to the second prong of the ALJ's inquiry, neither party alleges that the ALJ found Plaintiff was malingering.  (See generally J. Mot.)  The Court therefore is required to determine whether the ALJ identified which of Plaintiff's subjective allegations of impairment he discounted, and whether the ALJ provided specific, clear, and convincing reasons for doing so.  See Brown-Hunter, 806 F.3d at 489; Lambert, 980 F.3d at 1277.

The ALJ summarized Plaintiff's testimony as follows:

The claimant alleged she was disabled due to a stroke, limited mobility due to stroke, depression, and arthritis (Exhibit 2E, p. 2). She testified that she has been outpatient since her stroke in January of 2022 and has a walker and a four-point cane that was diagnosed from [sic] doctor as well as a shower chair.  She explained she has appointments with psych every three months as is on [sic] medication but has had no hospitalizations due to mental health. She reported she does not smoke but she vapes and has done detox for drugs. She stated that she has been sober since her stroke, but she does drink a little

24cv2460-LR

bit, she had a relapse on methamphetamine twice, last used meth in March of 2023, and last smoked marijuana a couple of weeks ago. She indicated that she is weak on her right side, and she cannot go upstairs, she does physical therapy twice a week and she cannot type with her right hand. She stated that her consultative examination did not do a thorough examination that lasted for five minutes, and she had brought a cane to the examination.

(AR at 25)

The ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Id.) The ALJ then discounted Plaintiff's subjective symptom testimony, citing the following reasons: (1) the objective medical evidence did not support Plaintiff's allegations of disabling symptoms and limitations; (2) Plaintiff's allegations of disabling symptoms were not consistent with her daily activities; and (3) Plaintiff had mostly routine, conservative, and non-emergency treatment. (See id. at 25–26.)

The Court can only assess the reasoning the ALJ provided in his decision. See Revels, 874 F.3d at 654 (stating that a court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [he or she] did not rely"); Garrison, 759 F.3d at 1010 (same). The Court will therefore examine the validity of the ALJ's stated reasons for discounting Plaintiff's testimony.

a. Inconsistency with medical evidence

The ALJ discounted Plaintiff's subjective symptom testimony because Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms were inconsistent with the medical evidence. (AR at 25.) Generally, the ALJ may not reject the claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). However, "when objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such

26

24cv2460-LR

testimony." Smartt v. Kijakazi, 53 F.4th 489, 498 (9th Cir. 2022) (explaining that Burch does not forbid the ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony). Contradiction of the claimant's subjective complaints with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. See Carmickle v. Comm'r. Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ must identify "specific, clear, and convincing examples" that contrast the claimant's "subjective [ ] testimony with objective medical evidence." Smartt, 53 F.4th at 499. "The Ninth Circuit has found that evidence documenting intact limb strength demonstrates greater functionality than claimed." Peters v. Comm'r of Soc. Sec., Case No. 2:23-cv-01924 AC, 2024 WL 4225839, at *5 (E.D. Cal. Sept. 18, 2024) (citing Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999); Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996)); see also Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) (upholding the ALJ's finding that the claimant's subjective complaints of pain were contradicted by normal examination findings); Ryan L. v. O'Malley, Case No.: 23-cv-338-DDL, 2024 WL 1283812, at *6 (S.D. Cal. Mar. 26, 2024) (finding that the ALJ properly discounted plaintiff's subjective symptom testimony, where the ALJ found that "the consistently normal findings on physical examination over a period of years rendered [p]laintiff's allegations that he could not sit upright, walk 'down the street,' or use his arms, hands or fingers without pain less than credible.").

In this case, Plaintiff testified during her July 16, 2024, administrative hearing that she was unable to work because her stroke completely weakened her right side, affecting all aspects of her life, and that she was unable to lift anything or go up the stairs. (AR at 349–50.) Specifically, Plaintiff stated that she used a cane every day and needed an assistive device to help her walk, even inside the home, and that she could only walk as far as less than half a block. (Id. at 350–51.) The ALJ found that the objective medical evidence did not corroborate the extreme degree of limitation Plaintiff alleged or her asserted cane use. (Id. at 25–28.) In particular, the ALJ concluded that, contrary to

Plaintiff's allegations regarding the severity of her symptoms, Plaintiff's medical records documented her ability to sit, stand, walk, lift, and carry, demonstrating her improvements after her stroke.  (See id. at 27–28.)  The ALJ cited Dr. Dao's January 10, 2023, examination, documenting that Plaintiff could generate ten to thirty-five pounds of force with her right and left hands, respectively.  (Id. at 27 (citing id. at 855–62, 863–70).)  Dr. Dao observed that Plaintiff entered the examination room without an assistive device, noted only slight difficulty standing on her right toes and heels while she bore most of her weight on her left leg, and found 5/5 motor strength in all extremities, with only slightly reduced strength in the right upper extremity compared to the left.  (Id.)  Dr. Dao opined that Plaintiff could lift and carry fifty pounds occasionally, twenty-five pounds frequently, and could walk or stand for six hours in an eight-hour day.  (Id. at 30.)  As discussed in Section VI.A.3.a.i, the ALJ correctly found Dr. Dao's opinion mostly persuasive because of its supportability and consistency with the evidence of record. (Id.)

The ALJ also determined that "[Plaintiff's] alleged symptoms [were] just not reasonably consistent with the medical evidence and other evidence in the record."  (Id. at 27.)  "The ALJ may . . . compare a claimant's statements to medical providers regarding their symptoms and daily activities to statements made in the context of their disability application."  See Mofeda Z. v. Bisignano, Case No.: 24-CV-2224-MMA-DDL, 2025 WL 2399670, at *6 (S.D. Cal. Aug. 19, 2025).  In this case, the ALJ cited October 19, 2022, examination notes from PA Austin Brett at SouthBay Urgent Care, documenting that Plaintiff denied joint pain, edema, myalgias, dizziness, or headache, and had normal gait and intact cranial nerves.  (AR at 27 (citing id. at 837–39).)  The ALJ further relied on March 23, 2023, examination notes from Dr. Elsayed, who reported that Plaintiff was fatigued, but did not have arthralgias, back pain, dizziness, light-headedness, numbness, and headaches.  (Id. (citing id. at 962).)  Further, the ALJ cited July 19, 2023, SouthBay Urgent Care notes from PA Megan Rodriguez, which stated that Plaintiff denied

24cv2460-LR

dizziness, headache, and numbness, and that her gait and upper and lower extremity examinations were normal.  (Id. (citing id. at 842–43).)

The ALJ cited Plaintiff's improvements and normal physical examinations as reasons to discount Plaintiff's subjective symptoms.  (Id. at 26–27.)  The ALJ noted that Plaintiff was discharged from the hospital on February 18, 2022, after significant progress with physical and occupational therapy, at which time her right upper and lower extremity weakness was almost completely resolved, and she was independent in mobility and gait.  (Id. at 26 (citing id. at 1032–34).)  The ALJ highlighted findings that Plaintiff's "right lower extremity strength was 5/5, and right upper extremity strength was about 4+/5 in handgrip, supporting a limitation to a medium exertion."  (Id.)  The ALJ also cited physical therapy records from May 6, 2022, through November 25, 2022, showing that Plaintiff reported improvement, minimal right shoulder pain, and the ability to perform activities of daily living.  (Id. at 27 (citing id. at 676).)  However, the ALJ also noted that Plaintiff continued to have difficulties going up and down stairs, getting on and off her bike, and walking over half a block due to fatigue.  (Id.)  In addition, the ALJ cited October 4, 2022, notes from Dr. Elsayed documenting that Plaintiff did not have arthralgias, back pain, gait problems, joint swelling, myalgias, neck pain or stiffness, dizziness, numbness, and headaches, and that she had normal coordination, gait, and reflexes—findings the ALJ deemed consistent with limiting Plaintiff to no more than frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling.  (Id. (citing id. at 967).)

The ALJ further relied on numerous records demonstrating Plaintiff's progress and improvement after her stroke, noting that, despite Plaintiff's allegations regarding the severity of her symptoms and limitations, multiple providers consistently recorded good results from physical therapy, normal gait and strength, with intact 5/5 strength in her lower extremities and 5/5 motor strength in all extremities.  (Id. at 26–30 (citing id. at 641, 664–66, 676, 837–38, 841–43, 855–62, 863–70, 962–63, 967, 968–69, 971, 973, 1032–34)); see also Macri, 93 F.3d at 544 (noting that the evidence documenting intact

limb strength is a specific reason to reject a claimant's subjective pain testimony). Ultimately, the ALJ concluded that Plaintiff's examination findings showing 5/5 motor strength in all extremities, intact sensation, normal gait, normal range of motion of all joints, and normal neurological examination were inconsistent with Plaintiff's assertions of extreme limitations.  (AR at 27.)  The ALJ therefore reasonably determined that the objective evidence in the record was inconsistent with Plaintiff's allegations of extreme limitations.  See Scianna v. Saul, 839 F. App'x 134, 135 (9th Cir. 2021) (finding that an inconsistency with objective evidence can form a basis for rejecting a claimant's allegations) (quoting Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.")).

In sum, the Court finds that ALJ properly identified the portions of Plaintiff's subjective symptom testimony that he discounted, including Plaintiff's reports of extreme weakness, need for an assistive device to ambulate, and inability to walk more than half a block.  See Morgan, 169 F.3d at 599–600 (finding that "[t]he ALJ provided clear and convincing reasons for rejecting [Plaintiff's] testimony" by "point[ing] to specific evidence in the record—including reports by [Plaintiff's doctors]—in identifying what testimony was not credible and what evidence undermined [Plaintiff's] complaints.") The ALJ cited specific, largely normal examination findings that indicated greater functional capacity than alleged and thus provided clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's symptom testimony.  See Smartt, 53 F.4th at 498; Parra, 481 F.3d at 750.  The ALJ therefore provided a clear and convincing reason, supported by substantial evidence in the record, to discount Plaintiff's subjective symptom allegations.

### b.  Daily activities

The ALJ also discounted Plaintiff's subjective symptom testimony based on her relatively normal level of daily activity and interaction.  (AR at 25.)  Specifically, the ALJ stated that:

24cv2460-LR

> [Plaintiff] admitted activities of daily living including she has a driver license with no limitations.  In a function report, the claimant acknowledged she stays with friends, showers, reads, gets to doctor appointments, can go out alone, can walk places, shops in stores, manages her finances, socializes in person and via phone and texting, goes to the park and library, has no problems getting along with family, friends, neighbors, or others, and can follow instructions good (Exhibit 4E).  She was fully functional in her activities of daily living (Exhibit 3F, p. 4).  She told Dr. Whitehead that she has some difficulty with general daily tasks around the home because of her reported problems, but on her own schedule and timing she is generally able to perform most daily living activities, tasks around the home, and the like; she can pick up and straighten up around the house, take out the trash, dust, perform general cleaning, sweeping, mopping, vacuuming, laundry, dishes, and other general household tasks; she is able to cook and prepare simple foods, shower, dress, bathe, and perform all personal hygiene activities; and she can drive and is able to take public transportation (Exhibit 9F, p. 3).

(Id. at 25.)

The ALJ concluded that "[t]hese activities reflect a significant functional capacity and not an individual unable to sustain regular and continuing work due to medically determinable impairments," and that the physical and mental capabilities required to perform such activities "replicate those necessary for obtaining and maintaining employment."  (Id.)

An ALJ may properly consider the claimant's daily activities in evaluating testimony regarding subjective symptoms.  See 20 C.F.R. § 404.1529(c)(3)(i).  An ALJ may discount a claimant's subjective symptom testimony on the following grounds: (1) the claimant's daily activities involved skills that contradict the claimant's other testimony, or (2) the claimant's daily activities meet the threshold for transferable work skills.  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Steele v. Berryhill, Case No.: 3:17-cv-01923-LAB (RNB), 2018 WL 2718033, at *3 (S.D. Cal. June 6, 2018) (same).  In this case, the ALJ relied on both grounds.  (See AR at 25.)

With respect to the first ground, the ALJ reasonably found that Plaintiff's reported daily activities undermined her allegations of extreme limitation.  Plaintiff testified that she requires an assistive device such as a cane or walker, cannot sustain prolonged

24cv2460-LR

standing and walking, and struggles in multiple functional domains.  (Id. at 338–60).  The ALJ cited evidence that Plaintiff was able to walk to different places, shop in stores, attend appointments, and perform a broad range of household chores and personal care activities without incapacitating limitations she alleged.  (See id. at 25 (citing id. at 569–76 (containing Plaintiff's function report, acknowledging that she stays with friends, showers, gets to doctor appointments, can go out alone, walk places, shop in stores, manage finances, socialize in person, and go to the park and library); id. at 676 (containing physical therapy notes, documenting that Plaintiff is fully functional in her activities of daily living); id. at 873 (containing examination notes documenting Plaintiff's ability to perform most daily living activities, including "pick[ing] up and straighten[ing] up around the house," taking out the trash, performing general cleaning, sweeping, vacuuming, laundry, dishes, and other general household tasks, as well as cooking, preparing simple foods, showering, dressing, bathing, performing all personal hygiene activities, and driving)).)  In light of this record, the Court finds that substantial evidence supported the ALJ's conclusion that Plaintiff's activities of daily living were inconsistent with the testimony of her alleged impairment.  See Thomas v. Barnhardt, 278 F.3d 947, 958–60 (9th Cir. 2002) (concluding that an ALJ may reject a claimant's testimony when her daily activities, such as household chores, are inconsistent with the alleged limitation); see also Scolari v. Kijakazi, Case No.: 21- cv-1250-BLM, 2022 WL 6785752, at *4–5 (S.D. Cal. Oct. 11, 2022) (finding that substantial evidence supported the ALJ's determination that a plaintiff's daily activities were not consistent with her subjective testimony and claims, which was a clear and convincing reason to discount the plaintiff's subjective testimony and claims).

As for the second ground on which the ALJ relied to discount Plaintiff's subjective symptom testimony, the ALJ determined that Plaintiff's activities meet the threshold necessary for obtaining and maintaining employment.  (AR at 25.)  "[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific

24cv2460-LR

findings relating to the claimant's daily activities." Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991); see also Orn, 495 F.3d at 639.  Here, the ALJ discounted Plaintiff's allegations by determining that she remained fully functional in her activities of daily living, and that her physical, mental, and social capabilities to perform many of those activities "replicate those necessary for obtaining and maintaining employment." (AR at 25.)

Consistent with the ALJ findings, Plaintiff's medical records demonstrate Plaintiff's ability to be functional in her activities of daily living.  (See id. at 676 (containing November 25, 2022, examination documenting Plaintiff's report that she felt improved with minimal pain in the posterior or the right shoulder, was fully functional in her activities of daily living, but continued to have difficulties going up and down stairs, getting on and off her bike as well as walking over half a block due to fatigue); id. at 683 (containing November 15, 2022, examination notes documenting that Plaintiff was fully functional in her activities of daily living); id. at 888–89 (containing February 15, 2023, examination notes documenting that Plaintiff was able to complete activities of daily living and walk independently, with steady gait)).  The ALJ highlighted Plaintiff's ability to manage her personal hygiene, prepare meals, perform a wide array of household chores, manage finances, maintain social relationships, and travel independently by driving and using public transportation, and reasonably characterized these tasks as requiring planning, concentration, physical endurance, and interpersonal interaction comparable to the basic demands of unskilled work.  (Id. at 25 (citing id. at 569–76, 873).)  These activities are similar to activities that the Ninth Circuit determined could be applied to the workplace.  See Stubbs-Danielson, 539 F.3d at 1175 (finding that the claimant's activities of cooking, house cleaning, doing laundry, and helping her husband in managing finances "suggest[ed] the claimant may still be capable of performing the basic demands of competitive, remunerative, unskilled work on a sustained basis"); Burch, 400 F.3d at 681 (finding that the claimant's daily activities could reasonably be found to be transferrable to a workplace, where the activities suggested that the claimant

24cv2460-LR

was "quite functional" because she was able to care for her personal needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her and her nephew's finances).

The ALJ reasonably determined that Plaintiff's daily activities both contradicted her testimony and demonstrated skills transferable to a work setting. Under Ninth Circuit precedent, the Court must defer to that interpretation where it is supported by substantial evidence. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1198 (9th Cir. 2004) (quoting Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion."); Ahearn, 988 F.3d at 1115–16 (same). Accordingly, the ALJ's reliance on Plaintiff's daily activities during the relevant period constitutes a clear and convincing reason, supported by substantial evidence, for discounting her subjective symptom allegations.

### c. Conservative treatment

The ALJ further discounted Plaintiff's subjective symptom testimony after concluding that her treatment was conservative. (AR at 25–26.) To support this conclusion, the ALJ only stated that "the treatment records reveal the claimant received mostly routine, conservative, and non-emergency treatment since the alleged onset date. The undersigned has read and considered all the medical evidence in the records (Exhibits 1F–28F)." (Id. at 26.)

The treatment a claimant seeks and receives is an important indicator of the intensity and persistence of the claimant's symptoms. See 20 C.F.R. § 404.1529(c)(3)(v). Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of the claimant's impairment. See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008); Parra, 481 F.3d at 750–51. Nevertheless, conservative treatment is not a proper basis for discounting a claimant's symptom allegations where there is no indication that more aggressive treatment options are appropriate or available.

34

24cv2460-LR

See Carmickle, 533 F.3d at 1162; Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010).

In this case, the ALJ did not properly evaluate the conservative nature of Plaintiff's treatment. Rather than identifying specific examples or explaining why the cited treatment undercuts Plaintiff's allegations, the ALJ simply cited twenty-eight exhibits without analysis. (AR at 26.) The ALJ's generalized and cursory reference does not rise to the level of "specific, clear, and convincing reasons," for discounting Plaintiff's subjective symptom testimony based on Plaintiff's conservative treatment. See Reddick v. Charter, 147 F.3d 715, 722 (9th Cir. 1998) (providing that generalized references do not constitute the "specific, clear, and convincing reasons" to discount a claimant's subjective symptom testimony, and stating that the ALJ must identify what testimony is not credible and what evidence undermines the testimony); Thomas, 278 F.3d at 958 (providing that the ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony"). The Court therefore finds that the ALJ's reference to Plaintiff's allegedly conservative treatment does not provide a clear and convincing reason for discounting her subjective symptom testimony. Nonetheless, because the ALJ provided other valid, independently adequate reasons supported by substantial evidence in the record, which are discussed above, the ALJ's decision to discount Plaintiff's symptom testimony was supported by substantial evidence in the record.

**d. Conclusion**

Accordingly, the ALJ provided three reasons for discounting Plaintiff's subjective symptom testimony. Although one of those reasons was not supported by substantial evidence, substantial evidence supported the ALJ's two other stated reasons. The Court therefore finds that the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony.

///

///

24cv2460-LR

## VII.  CONCLUSION AND ORDER

For the reasons stated above, the Court finds that the ALJ did not err in his RFC assessment for Plaintiff.  The Court further finds that the ALJ properly discounted Plaintiff's subjective symptom testimony.  Accordingly, the Court **ORDERS** that judgment be entered affirming the decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and dismissing this case.

**IT IS SO ORDERED.**

Dated:  March 23, 2026

_____
Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

24cv2460-LR